**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------
LANCE BOOKER,

                                Petitioner,

                                                        10CV1105  (RGK)

            v.

THOMAS LAVALLEY,

                                Respondent.
-------------------------------------------------------------------------

APPEARANCES:                          OF COUNSEL:

Lance Booker
05-A-0049
Clinton Correctional Facility
P.O. Box 2001
Dannemora, New York 12929

HON. ERIC T. SCHNEIDERMAN            ALYSON J. GILL
Office of the Attorney General       PRISCILLA STEWARD
120 Broadway                         Assistant Attorneys General
New York, New York 10271

**RICHARD G. KOPF**
**Senior United States District Judge for the District of Nebraska (by designation)**

### DECISION and ORDER

        Lance Booker ("Petitioner") was convicted of playing an integral part in the

murder of a police informant.  He was sentenced to life in prison without parole.  He

challenges that conviction and the resulting sentence in a petition filed pursuant to 28

U.S.C. § 2254.  Dkt. No. 1.  The petition will be denied.

### *I. BACKGROUND*

        The Respondent has filed the relevant state court records.  Those records

appear at Docket Number 12.  The Respondent has also filed a long and very detailed

brief consisting of 75 pages.  Dkt. No. 10.  Condensed and summarized, the following appears from the record.

In December 2003, Michael Hoffler arranged for the murder of the victim, a confidential informant (Christopher Drabik) for the City of Albany Police Department who had engaged in two controlled buys with Hoffler, in order to prevent the victim from testifying at Hoffler's drug trial.  Petitioner, Hoffler, and Gregory Heckstall where all involved in that effort.  Following the fatal shooting of the victim on December 30, 2003, one week prior to the commencement of Hoffler's drug trial, Petitioner, Hoffler, and Heckstall were arrested and charged with the victim's murder.

At the conclusion of the ensuing jury trial, Petitioner was convicted, as an accomplice, of murder in the first degree (two counts) and conspiracy in the second degree.  The trial court sentenced Petitioner to two concurrent terms of life imprisonment without the possibility of parole upon his murder convictions and a concurrent prison term of 8 1/3 to 25 years for his conspiracy conviction.

The record reflects that Petitioner's criminal history was substantial and violent. He had four felony convictions.  His record began when Petitioner was convicted at 17 of a violent felony involving a loaded weapon.  Dkt. No. 12-29 at CM/ECF p. 10. Petitioner also had four misdemeanors and one of those involved cutting someone's face with a knife.  *Id.* at CM/ECF p. 11.

Petitioner perfected his direct appeal.  As will be discussed more fully later, Petitioner's direct appeal resulted in a thoughtful opinion and his conviction and sentence were affirmed.  *People v. Booker*, 53 A.D.3d 697 (3d Dep't 2008).  Leave to appeal further was denied.

Following separate jury trials, Heckstall and Hoffler were likewise found guilty of, among other things, murder in the first degree.  Heckstall's conviction was affirmed. *People v. Heckstall*, 45 A.D.3d 907 (3rd Dep't 2007).  As for Hoffler, the Appellate Division reversed his conviction and remanded for a new trial because the jurors had not properly been sworn.  *People v. Hoffler*, 53 A.D.3d 116, 120-124 (3d Dep't 2008).  Although the record is not entirely clear, it appears that the matter may still be pending and the People are apparently intending to retry Hoffler for murder.  *See People v. Hoffler*, 90 A.D.3d 1413, 1414 n.2 (3d Dep't 2011) (as of December 29, 2011, noting that retrial had not yet occurred); *Hoffler v. Jacon*, 72 A.D.3d 1183 (3d Dep't 2010) (retrial of Hoffler was not barred by statutory or constitutional double jeopardy rights).

### A.  Overview of Killing

Hoffler enlisted Petitioner to murder Drabik and gave Petitioner a gun, $500, and a small amount of crack-cocaine.  When Petitioner failed to kill Drabik, Hoffler enlisted Heckstall, who agreed to kill Drabik.  On December 29, 2003, Petitioner supplied Hoffler with a loaded gun, ammunition, and a prepaid Tracfone that would later be used to contact Drabik to lure him to the location of the killing.

On December 30, 2003, Drabik received a phone call from the user of the Tracfone and agreed to go to 478 6th Avenue in Troy.  Petitioner, Hoffler, and Heckstall then drove to that location.  While Petitioner and Hoffler waited in the car, Heckstall approached Drabik and shot him with the gun Petitioner had provided to Hoffler.  Drabik died at a hospital about two hours later.  An eyewitness identified Heckstall as the shooter.

Over the next several weeks, Petitioner gave several written statements to the detectives about the planning and execution of Drabik's murder that were later used at Petitioner's trial.  Petitioner was arrested in connection with the murder on January 26, 2004.

### B.  Trial Judge's Rulings Regarding Suppression of Petitioner's Statements

Defense counsel challenged the statements that Petitioner had given the police. The trial court, however, overruled those challenges and carefully explained the court's reasoning in a 25-page opinion.  Dkt. No. 12-1.

Initially, the court concluded that Petitioner was not in custody during the police questioning on January 7 and 8, 2004.  The court found that Petitioner voluntarily accompanied the police from Newburgh to the Albany Police Department.  The court recognized that Petitioner was never handcuffed, restrained, or frisked.  The court found that Petitioner was not a suspect in the homicide at that time and was specifically informed by the police he was not going to be placed under arrest.  The court found it significant that Petitioner was cooperative with the police investigation and told his lawyer, Mr. Osofisan, over the phone that he "did not believe he had anything to worry about" with respect to the investigation.  Finally, the court noted that Petitioner was not arrested and was returned to Newburgh as promised by the police.  Therefore, the court concluded, *Miranda* warnings were not required prior to any police questioning or taking of oral or written statements from Petitioner on January 7 and 8, 2004.

The court then determined that, although Petitioner was not in custody, his right to counsel had attached on January 7 and 8, 2004, when Mr. Osofisan gave Petitioner legal advice over the phone and informed the police of his representation.

However, the court recognized that Petitioner had the full benefit of the advice of counsel before deciding to speak to the police on January 7, and Petitioner made a knowing and intelligent waiver of his right to have counsel present when he spoke to the police.  The court stated that Petitioner's waiver was conditioned upon the requirement that the police advise his attorney in the event that Petitioner would be arrested so that the attorney could be present.  The court found that the police fully complied with the condition of the waiver of counsel's presence, and therefore, Petitioner's right to counsel was not violated.

Next, the court determined that the attorney-client relationship between Petitioner and Mr. Osofisan terminated on January 9, 2004, and that the police were aware of the termination of that relationship.  As a result, Petitioner could then waive his right to counsel without counsel being present.  Furthermore, because the attorney-client relationship had ended, the police were no longer bound by the conditions Mr. Osofisan had placed upon them on January 7, 2004, in order to speak to Petitioner.

Turning to the events of January 25, 2004, the court found that, although Petitioner voluntarily accompanied the police to the Troy Police Department, once there, the atmosphere became custodial in nature since the police took Petitioner's identification and the questioning was now accusatory in nature as opposed to investigatory.  The court found that an innocent person would not have believed that he was free to leave and Petitioner was, therefore, in custody once he reached the police station.

The court then found that, after informing Petitioner of his *Miranda* rights, Petitioner knowingly, intelligently, and voluntarily waived those rights.  The court also

determined that, even though it was unnecessary, the police administered the *Miranda* warnings to Petitioner again prior to his signing a subsequent written statement in the early morning hours of January 26, 2004.  Finally, the court held that the police had probable cause to arrest Petitioner.

### C.  Trial

It would serve no useful purpose to provide a blow-by-blow description of the evidence adduced at trial.  Respondent has done so, and Respondent's summary is accurate.  Dkt. No. 10 at CM/ECF pp. 17-31.

Summarized and condensed, the trial evidence, which included Petitioner's own statements as well as his trial testimony, show that he played an instrumental role in the killing.  He initially agreed to do the shooting himself.  He obtained the murder weapon, ammunition, and the TRAC phone used to lure the informant to his death.  Prior to obtaining these instrumentalities, Petitioner knew that they would be used to kill the informant.  He also secured lodging for the shooter the night before the killing with a woman who would and did provide sexual services to the man.  Petitioner was, by his own admission, present when the informant was killed.

In the end, it is not surprising that on December 8, 2004, the jury convicted Petitioner of two counts of first degree murder and one count of second-degree conspiracy. On January 6, 2005, Petitioner was sentenced.

### D.  Direct Appeal

On direct appeal, Petitioner was represented by a new lawyer who filed a brief in the Appellate Division, Third Department, arguing that: (1) the trial court improperly denied Petitioner's motion to suppress his statements to the police because he was

-6-

denied his attorney after his right to counsel had attached; (2) the evidence was legally insufficient to support his conviction and the verdict was against the weight of the evidence; (3) the prosecutor's summation remarks denied Petitioner his right to a fair trial; (4) the trial court erred by failing to make an inquiry of a trial juror who offered an equivocal response when answering the verdict poll; and (5) Petitioner's sentence was excessive.  The People filed a brief opposing Petitioner's appellate claims.

On July 3, 2008, the Appellate Division, Third Department, unanimously affirmed the judgment of conviction. *People v. Booker*, 53 A.D.3d at 697 (holding, among other things, that (1) police did not violate Petitioner's right to counsel by interrogating him; (2) evidence was sufficient to support convictions; and (3) trial court did not abuse its discretion in sentencing Petitioner to life imprisonment without possibility of parole especially considering his lengthy criminal history).

Petitioner's attorney sought leave to appeal to the New York Court of Appeals, raising all of the claims raised before the Appellate Division.  The People did not file a response to Petitioner's leave application.  On November 12, 2008, the New York Court of Appeals denied Petitioner's leave application.  *People v. Booker*, 11 N.Y.3d 853 (2008).

### E.  Motion to Vacate Judgment

On November 19, 2008, Petitioner filed a pro se motion, pursuant to New York Criminal Procedure Law ("CPL") § 440.10, to vacate the judgment on the grounds that: (1) the People violated his due process rights by improperly changing the theory of the case when they dismissed two counts of the indictment against Michael Hoffler, which accused him of second-degree conspiracy and first-degree murder-for-hire; (2) the trial

court failed to administer a truthfulness oath to prospective jurors prior to questioning them regarding their qualifications to serve as jurors; and (3) Petitioner's trial counsel was ineffective for failing to object to the trial court's failure to administer a truthfulness oath to prospective jurors.  The People opposed the motion.

On March 9, 2009, the Rensselaer County Court denied Petitioner's CPL § 440.10 motion.  Among other things, the court ruled that (1) under Penal Law § 105.30 "a defendant may be convicted of conspiracy even though all other parties to the illicit agreement are not criminally liable . . ."; (2) any suggestion that the People failed to prove an overt act was a record based claim that should have been raised on direct appeal; and (3) any claim that the trial court failed to administer oaths to jurors was a record based claim that should have been raised on direct appeal and was procedurally barred under CPL § 440.10(2)(c).

Petitioner filed a pro se application for leave to appeal to the Appellate Division, Third Department, asking the court to review the claims raised below. On May 19, 2009, the Appellate Division, Third Department, denied Petitioner's leave application.

### F. Coram Nobis Application

On December 1, 2009, Petitioner filed a pro se motion for a petition for a writ of error coram nobis in the Appellate Division, claiming that he received the ineffective assistance of appellate counsel because his appellate attorney failed to argue that: (1) the trial court failed to administer the truthfulness oath to the prospective jurors as required by CPL § 270.15; (2) the People improperly changed the theory of the case; (3)

the People violated *Crawford v. Washington*, by introducing the statement of Latasha Gause, who did not testify at trial; and (4) his trial counsel was ineffective for failing to raise these issues during the trial.  The People filed an affirmation and memorandum of law opposing Petitioner's claims.

On February 19, 2010, the Appellate Division, Third Department, summarily denied Petitioner's coram nobis petition.  Petitioner filed a pro se application for leave to appeal to the New York Court of Appeals, raising the same claims he raised before the Appellate Division.  On June 30, 2010, the New York Court of Appeals denied Petitioner's leave application.

## II.  DISCUSSION

Petitioner filed the pending petition on or about September 15, 2010.  Dkt. No. 1. Respondent concedes that the petition is timely.  Dkt. No. 10 at CM/ECF p. 39.

Condensed and summarized, Petitioner raises the following nine claims: (1) the trial court improperly denied Petitioner's motion to suppress his statements to the police because he was denied his attorney after his right to counsel had attached; (2) the evidence was legally insufficient to support Petitioner's conviction and the verdict was against the weight of the evidence; (3) the prosecutor's summation remarks denied Petitioner his right to a fair trial; (4) the trial court erred by failing to make an inquiry of a trial juror who offered an equivocal response when answering the verdict poll; (5) Petitioner's sentence was excessive; (6) the People violated Petitioner's due process rights by improperly changing the theory of the case; (7) the trial court failed to administer a truthfulness oath to prospective jurors prior to questioning them regarding their qualifications to serve as jurors; (8) Petitioner's trial counsel was ineffective for

failing to object to the trial court's failure to administer a truthfulness oath to prospective jurors; and (9) Petitioner received the ineffective assistance of appellate counsel.

### A. Overview of Legal Analysis

The issues raised by Petitioner are not difficult.  None of Petitioner's arguments entitle him to relief.  Some claims are exhausted but procedurally defaulted and nothing has been shown to excuse the default.  Other claims were resolved against Petitioner in the state courts, those decisions are due deference under provisions of the Antiterrorism and Effective Death Penalty Act, and when that deference is applied the claims must be denied.  None of the claims have substantive merit.

Respondent's brief presents all the reasons for denial of the petition and the brief does so in fatiguing but well-written detail.  This court agrees with that reasoning.  Rehashing each of those reasons would unduly extend the length of this opinion.  The following discussion presents only some of the most salient reasons why each claim should be denied.

### B. Claim One

Regarding claim one and the assertion that the trial court erred in failing to suppress Petitioner's statements because his right to counsel was violated when the police questioned him despite the fact that he had an attorney, that claim was thoroughly presented and throughly discussed and rejected on direct appeal.  *See People v. Booker*, 53 A.D.3d at 699-702 (holding, among other things, that the police did not violate the defendant's right to counsel by interrogating him, even if the attorney who had previously been representing the defendant neither consulted with defendant prior to withdrawing from representing him nor advised defendant of the withdrawal prior

to the police questioning, since the attorney had signed a document in the presence of the prosecutor and members of the police department withdrawing as counsel for defendant, and that document was provided to the People, and the other investigating officers were informed that the attorney no longer represented defendant, and the investigating officers relied upon the attorney's withdrawal in pursuing further questioning of defendant).

The decision on direct appeal is entitled to deference under 28 U.S.C. § 2254(d)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").  The decision is also entitled to deference under 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").  Petitioner has not come close to making the statutory showing required to override the required deference, and this claim must be rejected.

### C.  Claim Two

Again, claim two regarding the legal sufficiency of the evidence was thoroughly presented and thoroughly discussed and rejected on direct appeal.  *See People v. Booker*, 53 A.D.3d at 702-704 (holding, among other things, that the evidence was

sufficient to establish element of intent, as required to support defendant's convictions for first-degree murder and second-degree conspiracy; evidence revealed that coconspirator showed defendant murder victim's driver's license, drove defendant to victim's house, offered to pay defendant to kill victim, and defendant agreed to kill victim and accepted a gun, five $100 bills, and crack cocaine from coconspirator, and when defendant failed to commit the crime, coconspirator enlisted someone else to kill victim, and when coconspirator told defendant he needed a cellular "TRAC phone" to call victim without calls being traced back to him, he was provided one by defendant, and defendant also acquired gun and bullets for coconspirator).  And, again, Petitioner has not come close to making the statutory showing required to override the required deference and this claim must be rejected.

Additionally, an independent review of the sufficiency of the evidence convinces the undersigned that a rational trier of fact could have easily found the essential elements of the crimes beyond a reasonable doubt.  *See, e.g.*, *Johnson v. Virginia*, 443 U.S. 307, 319 (1979) (on habeas review "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.").  In other words, even if this court addressed the merits, Petitioner would not be successful.

### D.  Claim Three

Claim three, that the prosecutor's remarks in summation denied Petitioner a fair trial, was presented on direct appeal, but was rejected because the error was "unpreserved for our review, as defendant failed to register an objection to any such statements."  *People v. Booker*, 53 A.D.3d at 704 (citations omitted).  This failure

provides an independent and adequate state bar that precludes review in this court.

*See*, *e.g.*, CPL § 470.05(2) ("For purposes of appeal, a question of law with respect to a

ruling or instruction of a criminal court during a trial or proceeding is presented when a

protest thereto was registered, by the party claiming error, at the time of such ruling or

instruction or at any subsequent time when the court had an opportunity of effectively

changing the same."); *Garcia v. Lewis*, 188 F.3d 71, 78-82 (2nd Cir. 1999) ("Simply put,

Garcia's trial counsel failed to bring to the trial court's attention the claim that Garcia

later attempted to advance on appeal.  This ran afoul of New York's legitimate

requirement that objections be raised 'in a way that [gives] the [trial court] the

opportunity to remedy the problem and thereby avert reversible error.' . . . In our view,

the Appellate Division reached a reasonable conclusion when it deemed Garcia's claim

unpreserved.  A contrary holding would only encourage the kind of 'sandbagging' that

procedural forfeiture rules reasonably discourage . . . and that 'undermines the

[justification] for the writ.'").

This court has applied the three factors set forth in *Cotto v. Herbert*, 331 F.3d

217, 239-240 (2nd Cir. 2003) (when determining whether procedural bar is adequate to

preclude federal review of claims raised in petition for federal habeas relief, court may

consider as guideposts: (1) whether alleged procedural violation was actually relied on

in state court, and whether perfect compliance with state rule would have changed state

court's decision, (2) whether state case law indicated that compliance with rule was

demanded in specific circumstances presented, and (3) whether Petitioner had

substantially complied with rule given realities of trial, and, therefore, whether

demanding perfect compliance with rule would serve legitimate governmental interest). None of these factors favor Petitioner—all of them favor Respondent.

In a similar vein, Petitioner has not made any showing that would excuse the procedural default.  For example, he has not shown "cause" and "prejudice" or "actual innocence."   Petitioner's claim is therefore procedurally barred.

Moreover, the undersigned has carefully reviewed the prosecutor's summation. Dkt. No. 12-17 at CM/ECF pp. 54-118.   Even if this court were to review the merits of Petitioner's claim about the summation, Petitioner would not be entitled to relief.  In sum, the prosecutor's remarks did not violate federal standards, and, even if they crossed the line, they were not sufficiently prejudicial to warrant relief.

### E.  Claim Four

In claim four, Petitioner asserts the trial court erred by failing to make an inquiry of a trial juror who offered an equivocal response when answering the verdict poll.  The Appellate Division found that this claim was defaulted because trial counsel did not lodge an objection.  *People v. Booker*, 53 A.D.3d at 704 ("by failing to object before the jury was discharged or otherwise request further procedures, defendant's contention that [the] County Court should have inquired further into an individual juror's vote upon the guilty verdict is not preserved for appellate review.") (citations omitted.)  Relying upon the authorities and principles just discussed, this ruling provides an independent and adequate state bar that precludes review of this claim in this court.

Morever, in an alternative ruling, the Appellate Division stated that "[i]n any event, the juror's response was not equivocal so as to require further inquiry by [the] County Court."  *Id.*  That alternative ruling is entitled to deference under 28 U.S.C. § 2254(e)(1).

More pointedly, the Appellate Division's factual determination is indisputably correct. The juror's response was not equivocal.  When asked whether the verdict announced by the foreperson was in all respects the juror's verdict, the juror responded: "Yes, regrettably, yes."  Dkt. No. 12-27 at CM/ECF p. 182 (juror number 3).

### F.  Claim Five

In claim five, Petitioner argues that his sentence was excessive.  Like all the other claims, there are several reasons why this claim must be rejected.  Initially, the claim was not presented on direct appeal as a federal constitutional claim, and, as a result, it was not exhausted on direct appeal.  Since Petitioner cannot now return to the state courts, this claim is procedurally defaulted and Petitioner has shown none of the grounds for excusing that default.

More simply, this claim will be denied because the sentence was imposed after Petitioner's conviction for murder of a police informant, the sentence was within the limits set by the state legislature and Petitioner's case is not the extremely rare one that could warrant relief under the Eighth Amendment.  *See*, *e.g.*, *Solem v. Helm*, 463 U.S. 277, 289-90 (1983) ("'outside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare.'") (emphasis in original) (citations omitted).

### G.  Claim Six

The sixth claim is odd.  It is asserted that the People violated Petitioner's due process rights by improperly changing the theory of the case when the People tried *Hoffler* rather than Petitioner.

Several months *after* Petitioner was sentenced, Hoffler, who was indicted on the same charges as Petitioner, went to trial.  As the trial started, the People dismissed a murder-for-hire charge and a conspiracy charge against Hoffler.  Hoffler was convicted of murder in the first degree.  (Heckstall, who was also separately tried,[1] was convicted of two counts of murder in the first degree and conspiracy in the second degree.)  Although Petitioner's claim is difficult to understand, he apparently contends that by not proceeding against Hoffler on all counts of the indictment, the People somehow denied Petitioner "due process."

In the CPL § 440.10 proceedings, the trial court patiently explained that Petitioner had no legitimate complaint because the purpose of the indictment that he faced was to provide him with notice of the charges and those charges did not change during the trial of Petitioner's case.  That the People decided not to try all counts of the indictment against Hoffler in a separate trial, did not in any way deprive Petitioner of the process he was due.  In that same vein, the judge explained that under New York law, "a defendant may be convicted of conspiracy even though all other parties to the illicit agreement are not criminally liable . . ."  Dkt. No. 12-9 at CM/ECF p. 4 (quoting *People v. Berkowitz,* 50 N.Y.2d 333, 342 (1980)).  Thus, Petitioner could be convicted of a conspiracy even though the People later decided not to proceed on a conspiracy theory against Hoffler.

---

[1]Separate trials of all three men were apparently required in order to avoid problems under *Bruton v. United States*, 391 U.S. 123 (1968) (admission of codefendant's confession that implicated defendant at joint trial constituted prejudicial error even though trial court gave clear, concise and understandable instruction that confession could only be used against codefendant and must be disregarded with respect to defendant.).  *See* Dkt. No. 12-9 at CM/ECF p. 3.

In short, to the extent that Petitioner's sixth argument states a federal claim at all, the rejection of that claim by the state courts is entitled to deference and, when that deference is given, the sixth claim must be rejected.

### H.  Claim Seven

In the seventh claim, Petitioner asserts that the trial court failed to administer a "truthfulness" oath to prospective jurors prior to questioning them regarding their qualifications to serve as jurors.  *See* CPL § 270.15(1)(a) (providing in part that "[s]uch persons shall take their places in the jury box and shall be immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the action.")

This claim was not raised on direct appeal.  In the CPL § 440.10 proceedings, the trial court determined that the claim was record based and therefore defaulted. Dkt. No. 12-9 at CM/ECF pp. 4-5 (citing, among other authorities, CPL § 440.10(2)(c)). Again, applying well known principles relating to procedural default (some of which were discussed in regard to claim three), claim seven is procedurally barred and no sufficient excuse has been shown to ignore the default.

Furthermore, even if the jurors were not sworn in violation of state law, without more, the violation of state law does not entitle Petitioner to federal habeas corpus relief.  *See*, *e.g.*, *Gaskin v. Graham*, No. 08-CV-1124, 2009 WL 5214498,  at *27, n.9 (E.D.N.Y. Dec. 30, 2009) (any violation of CPL § 270.15(1)(a) regarding the administration of juror oaths is a violation of state law for which a petitioner would not be entitled to  federal habeas relief); *Pinkney v. Senkowski*, No. 03Civ.4820, 2006 WL 3208595, at *6 (S.D.N.Y. Nov. 3, 2006) (the inadvertent omission of the juror's oath

does not involve a constitutional or federal violation).  Petitioner has provided no reason

to believe that any of the prospective jurors answered questions untruthfully or that the

failure to administer the oath was anything other than inadvertent.  Therefore, no federal

question is presented even assuming a lack of compliance with state procedural

provisions.

Finally, even if one were to plumb the record, Petitioner's argument lacks merit.[2]

The record reflects that the jurors were administered each of the required oaths—both

prior to voir dire and after the jurors were selected.  Dkt. No. 12-20 at CM/ECF p. 187

("Those who have been selected, please stand, raise your right hand.  The Clerk is

going to give you an *additional oath*. [] Whereupon, aforementioned seated jurors were

given the oath.[]") (emphasis added); Dkt. No. 12-20 at CM/ECF p. 244 ( "Let me make

sure we have everybody.  If you'll stand, raise your right hand, the clerk will give you an

*additional* oath. [] Whereupon, the aforementioned seated jurors were given the oath.[]")

(emphasis added); Dkt. No. 12-20 at CM/ECF p. 291 ("Those that have been selected, if

you would stand, raise your right hand, the clerk will give you an *additional* oath.

[]Whereupon, the aforementioned seated jurors given the oath.[]") (emphasis added).  In

summary, the fact that the oath given prior to voir dire was not memorialized does not

entitle Petitioner to federal habeas corpus relief where it is perfectly apparent that the

required oath was in fact administered.

---

[2]Indeed, even Petitioner admits that "it appears that the jury was sworn . . . ."  Dkt.
No. 1 at CM/ECF p. 44.

### I.  *Claim Eight*

In his eighth claim, Petitioner asserts that his trial counsel was ineffective for failing to object to the trial court's failure to administer a truthfulness oath to prospective jurors.  Initially, this claim is procedurally defaulted as it was not raised on direct appeal. Still further, the Appellate Division denied this ineffective assistance of counsel claim in the coram nobis proceedings, and that decision is entitled to a sort of "double deference."  *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question 'is not whether a federal court believes the state court's determination'  under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' . . . And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.") (citations omitted).

More fundamentally, and for some of the reasons expressed in the discussion of claim seven, Petitioner's ineffective assistance of trial counsel claim fails under a straight forward application of *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984) ( to succeed on a claim of ineffective assistance of counsel, a petitioner must demonstrate *both* that (1) the performance of his counsel was objectively unreasonable and (2) there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceeding would have been different).  In short, even if this court got to the merits, Petitioner's claim regarding his trial counsel would be rejected.

### J.  Claim Nine

Petitioner asserts in claim nine that his appellate counsel was ineffective because he did not argue that (1) trial counsel was ineffective for failing to move for dismissal on the juror oath question and (2) trial counsel was ineffective for failing to move to dismiss because the People changed the theory of the case in the Hoffler trial.  For the reasons expressed in the discussion of claims six, seven, and eight, this claim must be rejected as well.

### III.  CONCLUSION

The court has carefully considered each of Petitioner's claims.  None of them warrant relief.

In sum, justice was done and Petitioner got what he deserved.  Accordingly, it is hereby:

**Ordered** that the petition for a writ of habeas corpus is **denied**; and it is further

**Ordered**, that because the Court finds that Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), **no certificate of appealability** should be issued with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); and it is further

**Ordered,** that the Clerk serve a copy of this Decision and Order on all parties; and it is further

**Ordered**, that the Clerk enter judgment for Respondent and against Petitioner dismissing this matter with prejudice.

-20-

**IT IS SO ORDERED.**

<u>*s/Richard G. Kopf*</u>
Senior United States District Judge

Dated: February 11, 2013.

Syracuse, New York.